103 F.3d 131
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
John TEDESCO, Defendant-Appellant.
 No. 96-1527.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1996.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges; and EDGAR, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant John Tedesco appeals his conviction for bank fraud in violation of 18 U.S.C. § 1344. He also appeals the sentence imposed. Finding no error, we AFFIRM.
 
 I.
 
 2
 Defendant was involved in a bank fraud scheme that was conducted as follows. David Webb employed people ("recruiters") to recruit others ("accountholders") to open bank accounts, typically with $100 obtained from Webb. The accountholder would turn over his ATM card to the recruiter. Webb would then direct that bad checks payable to the accountholder be deposited in the new account through an ATM machine, using the accountholder's ATM card. The accountholder would then withdraw the money in cash and turn over all but a small percentage to his recruiter and to Webb. Webb pleaded guilty in 1993 to bank fraud, conspiracy to commit bank fraud, and counterfeiting; he testified in the instant case.[1]
 
 
 3
 Stanley Drozd was employed by Webb to recruit accountholders.[2] In September 1992, Drozd recruited defendant to open a bank account. On September 23, 1992, defendant opened a checking account at Comerica Bank with $100 provided by Webb. Defendant then turned over his ATM card with its access code to other participants in the scheme. On September 29, a stolen check made payable to defendant in the amount of $9862.07 was deposited in defendant's account through an ATM machine. On October 1, defendant made two cash withdrawals, in the amounts of $5200 and $4500, at two different Comerica branches, twenty-five minutes apart. It is unclear how much of the proceeds of the bad check defendant personally kept.
 
 
 4
 For his involvement in this scheme, defendant was found guilty on the charge of bank fraud in violation of 18 U.S.C. § 1344(1).[3] He was sentenced to ten months imprisonment and three years supervised release, ordered to pay restitution in the amount of $9700 and a mandatory special assessment of $50. Defendant timely appealed.
 
 II.
 A. Sufficiency of the Evidence
 
 5
 Defendant claims that the evidence failed to establish his guilt and that the District Court erred in denying his motion for acquittal pursuant to FED.R.CRIM.P. 29. The relevant inquiry on appellate review is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Elder, 90 F.3d 1110, 1120 (6th Cir.1996) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We resolve all conflicts in the testimony in the government's favor and draw every reasonable inference from the evidence in favor of the government. United States v. Bashaw, 982 F.2d 168, 171 (6th Cir.1992). "The government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." United States v. Jackson, 55 F.3d 1219, 1225 (6th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 328 (1995).
 
 
 6
 Defendant contends that the government failed to prove that he knowingly or intentionally participated in the bank fraud scheme. He argues that the entire scheme was devised by Webb without his knowledge or participation. Because knowledge and intent are elements of the crime, the failure to prove either would require an acquittal.
 
 
 7
 There was, however, ample evidence at trial to allow a rational jury to infer defendant's guilty knowledge and intent. There was evidence that defendant opened a bank account with $100, then turned over his ATM card and access code to Webb's recruiters, and eight days later made two withdrawals at different bank branches in amounts totalling $9700. Given that the only deposit into defendant's account after the opening deposit of $100 was the forged check made out to defendant in the amount of $9862.07, a jury could rationally find that defendant had knowledge of the bank fraud scheme and intended to participate in the scheme. Moreover, while the evidence does not establish how much, if any, of the proceeds of the fraud defendant kept, it is not necessary under this statute for the government to demonstrate "that defendant personally benefitted from his scheme to defraud the financial institution." United States v. Knipp, 963 F.2d 839, 846 (6th Cir.1992).
 
 
 8
 In addition, defendant's knowledge of the bank fraud may be inferred from his contradictory statements to FBI agents. On December 2, 1993, Special Agent Waugh interviewed defendant as part of the FBI's investigation of the activity in his account. Defendant told Agent Waugh that the large deposit in his account had been wire transferred into his account by two men whom he met at the Gibraltar Trade Center who agreed to loan him $10,000 to start his own business. Defendant told Agent Waugh that soon after he received the loan, the two men told him they needed the money back. He therefore wrote a check on his account returning the money.
 
 
 9
 When Agent Waugh informed defendant that the deposit had not been made by wire transfer and that he had written two checks to withdraw the money from his account, defendant's recollection changed. He now recalled that the money had indeed been deposited into his account by a check. He did not provide any explanation why he had written two checks withdrawing the funds.
 
 
 10
 Defendant also denied to Agent Waugh on December 2, 1993 that he knew Stanley Drozd. Yet on January 25, 1994, defendant voluntarily met with Agent Waugh and admitted that he had not been truthful with him earlier; that he was, in fact, a friend of Drozd. He now indicated that the two men who had lent him the money to start his business had been referred to him by Drozd.
 
 
 11
 A jury may infer consciousness of guilt from a defendant's false exculpatory statements. See Jackson, 55 F.3d at 1226 ("An implausible account of exculpatory events suggests that the defendant desires to obscure his criminal responsibility") (quoting United States v. Diaz-Carreon, 915 F.2d 951, 955 (5th Cir.1990)); 1 EDWARD J. DEVITT ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 14.06 (4th ed. 1992). A jury could infer from defendant's contradictory statements to the FBI that he knowingly and intentionally participated in the bank fraud scheme. We conclude that the evidence was constitutionally sufficient to support defendant's conviction.
 
 B. The Sentence
 
 12
 Defendant also claims that the District Court erred in not reducing his offense level for being a "minor participant" within the meaning of section 3B1.2(b) of the U.S. Sentencing Guidelines. We review the District Court's determination of defendant's role in the criminal activity for clear error. United States v. Miller, 56 F.3d 719, 720 (6th Cir.1995). Defendant has the burden of proving mitigating factors justifying the minor participant reduction by a preponderance of the evidence. Id.
 
 
 13
 Section 3B1.2 of the Sentencing Guidelines authorizes the sentencing court to decrease a defendant's offense level based on his mitigating role in the offense. Section 3B1.2(b) provides that a defendant who was a "minor participant" in the criminal activity shall have his offense level reduced by 2 levels. U.S.S.G. § 3B1.2.[4] An adjustment is appropriate only if the defendant was "less culpable than most other participants" and "substantially less culpable than the average participant" in the criminal enterprise. United States v. Perry, 908 F.2d 56, 58 (6th Cir.1990) (quoting U.S.S.G. § 3B1.2, comment.).
 
 
 14
 Defendant claims that he is entitled to a minor participant reduction because he was less culpable than Webb, the organizer of the scheme, and Drozd, who recruited defendant into the scheme. We disagree. Defendant's participation in the scheme was indispensable to the commission of the bank fraud. He opened the Comerica bank account in order to carry out the bank fraud; he gave his bank card and access code to other participants in the scheme to allow them to deposit the forged check; and he withdrew the proceeds of the fraud from his account. "A defendant does not become a minor participant simply because others planned a scheme and made all the arrangements for its accomplishment." Miller, 56 F.3d at 720; see also United States v. Burroughs, 5 F.3d 192, 194 (6th Cir.1993) (rejecting defendant's claim that he was a minor participant in wire fraud scheme, despite fact that other participants "planned the scam, obtained required input numbers, and made all arrangements other than causing the actual transmissions that produced the money").
 
 
 15
 Moreover, the fact that Webb and Drozd participated in a larger bank fraud scheme does not render defendant a minor participant in the scheme for which he was on trial--a scheme to defraud Comerica Bank of $9700. Defendant may well have been a minor participant in relation to the larger scheme devised by Webb, but this was not the relevant conduct on which defendant's sentencing was based. The offense for which defendant was sentenced was bank fraud resulting in a loss of between $5000 and $10,000. Defendant was not "substantially less culpable" than the other participants in the scheme as it related specifically to the $9700 loss to Comerica Bank. See, e.g., United States v. Walton, 908 F.2d 1289, 1303 (6th Cir.1990) (rejecting defendants' claim that they were entitled to minor participants reduction for small role in large cocaine conspiracy, because defendants were sentenced based on amount of cocaine with which they had been actively involved and not the larger amount involved in the entire conspiracy). The District Court's conclusion that defendant was not a minor participant in the bank fraud scheme is not clearly erroneous.
 
 III.
 
 16
 For the foregoing reasons, we AFFIRM defendant's conviction and sentence.
 
 
 
 *
 The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Defendant was not indicted along with Webb and 29 other individuals in April 1993 because at that time the government was unaware of defendant and his checking account at Comerica Bank
 
 
 [2]
 Drozd pleaded guilty to bank fraud in 1993 and was sentenced to twenty-four months imprisonment
 
 
 [3]
 Section 1344 provides in relevant part:
 Whoever knowingly executes, or attempts to execute, a scheme or artifice to defraud a financial institution ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
 18 U.S.C. § 1344.
 
 
 [4]
 Section 3B1.2 states:
 Based on the defendant's role in the offense, decrease the offense level as follows:
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 In cases falling between (a) and (b), decrease by 3 levels.
 U.S.S.G. § 3B1.2.